US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
OCT 04 2016
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| **MICHAEL ISON**, individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **A10 CAPITAL, LLC**, a Delaware limited liability company, <br><br> *Defendant*. | CASE NO. 16-2241 PKH <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Michael Ison ("Plaintiff" or "Ison") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant A10 Capital, LLC ("Defendant" or "A10 Capital") to stop A10 Capital's practice of making unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant A10 Capital is a commercial real estate lender specializing in middle-market commercial mortgages across the United States.

2. Unfortunately for consumers, Defendant A10 Capital casts its marketing net too wide. That is, in an attempt to promote A10 Capital's business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the

making of repeated unsolicited autodialed telephone calls to consumers' cellular telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.  By making the autodialed telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

4.  The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5.  Plaintiff Michael Ison is a natural person and citizen of the State of Arkansas. Plaintiff resides in Fort Smith, Sebastian County, Arkansas.

6. Defendant A10 Capital, LLC is a limited liability company organized and existing under the laws of the State of Delaware with headquarters located at 800 W Main Street, Suite 1100, Boise, Idaho 83702.

## JURISDICTION AND VENUE

7. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

8. The Court has personal jurisdiction over A10 Capital because Defendant committed tortious acts in Arkansas, solicits significant business in this District[1], has entered into business to business contracts in this District, the calls at issue were directed to and received in this District, and the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant A10 Capital does business in this District[2] and the causes of action arose, in substantial part, in this District. Additionally, Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

10. Defendant purports to be a balance sheet lender for middle-market commercial mortgages. Defendant specializes in loans ranging from $1 million to $20 million per property, offering bridge, permanent, bridge-to-permanent, and note purchase loans for commercial

---

[1] *See, e.g.* https://www.sbfi.org/a10-capital-hires-ned-smith-as-evp/ ("Mr. Smith will head up loan origination efforts in Kansas, western Missouri, Texas, Oklahoma, Arkansas and Louisiana."); https://www.linkedin.com/in/mark-mcclure-25804911 ("Mark is responsible for sourcing all new business opportunities in the Texas, Colorado, Oklahoma, Arkansas and Louisiana markets")
[2] *See, e.g.* http://a10capital.com/featured-transactions/14-5-million-student-housing-loan-refinance ("Property consists of 9 buildings with 232 units near the University of Arkansas.")

properties throughout the United States.

11.  While certain types of calls may be within the letter of the law when placed to landline ("wireline") telephones, the same calls to cellular ("wireless") telephones violate the TCPA where they are made without prior express written consent of the called party.

12.  Yet in violation of this rule, A10 Capital fails to obtain any prior express written consent to make these autodialed calls to cellular telephone numbers.

13.  In placing the calls that form the basis of this Complaint, Defendant A10 Capital utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by A10 Capital has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. A10 Capital's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention). In fact, A10 advertises this ability on its own website in its career pages—the job "Lead Development Specialist" includes such duties as to "Use calling software to manage calling lists."[3]

14.  Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

---

[3] http://a10capital.com/careers/lead-development-specialist

15. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. See 16 C.F.R. § 310.4(b)(3)(iv).

16. There are numerous third party services that will additionally scrub call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[4] Indeed, one service can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[5]

17. When placing these calls to consumers, A10 Capital failed to get prior express consent as required by the TCPA from cellular telephone owners/users to make such calls.

18. Furthermore, these consumers have no "established business relationship" with Defendant and their cellphone numbers are registered on the National Do Not Call Registry.

19. Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

20. Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

---

[4] *See, e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp.
[5] https://www.neustar.biz/services/tcpa-compliance

## FACTS SPECIFIC TO PLAINTIFF MICHAEL ISON

21. On June 29, 2006, Plaintiff registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

22. Plaintiff received a series of calls from Defendant in or around July 2016. On some of the calls that Plaintiff answered, the caller indicated that the purpose of the call was to soliciting Ison for a loan. On other calls there was dead air and hang-ups. During each of the calls during which Plaintiff was connected to a live operator, Plaintiff repeatedly told the caller to stop calling him.

23. Despite his "stop calling" requests, Plaintiff received two additional calls prior to July 26, 2016 from the phone number 623-738-3019. When he answered those calls, there was no one on the line.

24. Plaintiff was so frustrated at receiving these calls that he called back the phone number 623-738-3019 the same day to figure out which company was calling him. The agent who answered the call identified the company as A10 Capital. Plaintiff asked if she could identify for him the representative who keeps calling him. The agent identified the representative and immediately transferred Plaintiff to the representative's voicemail. Plaintiff left a voicemail asking that the representative call him back so he could clear up with agent once and for all that he never wanted to hear from the representative or company again.

25. On July 26, 2016 at 11:13 AM Plaintiff received a phone call from 208-577-5000 from the A10 Capital agent that had been calling him. Plaintiff informed the agent once again that the company should stop calling him.

26. Plaintiff never consented in writing or otherwise to receive autodialed telephone calls on his cellular telephone from A10 Capital.

27. Plaintiff does not have a relationship with A10 Capital, has never provided his telephone number to Defendant, and has never requested that A10 Capital place calls to him or offer its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to him and has no business relationship with Defendant.

28. Defendant at all times is and was aware that the above-described autodialed telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

29. By making unauthorized autodialed calls to consumer's cellular telephones as alleged herein, A10 Capital has caused consumers actual, concrete harm and annoyance. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls as A10 Capital's opt-out system does not work.

30. In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

31. On behalf of the Classes, Plaintiff seeks an injunction requiring A10 Capital to cease all unauthorized autodialed telephone calling activities, declaratory relief establishing that Defendant's calls violated the TCPA, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

32. Plaintiff Ison brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and three classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number; (3) for the purpose of marketing Defendant's products and services; (4) using the same equipment that was used to call Plaintiff, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of marketing Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Autodialed Stop Call Class**: All persons in the United States who from four years prior to the filing of this company (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone number, (3) for the purpose of marketing Defendant's products and services, (4) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

33. The following people are excluded from the Classes: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to

amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes and the manner by which Defendant claims it obtained prior express consent.

34. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendant A10 Capital, made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through A10 Capital's records and by reference to objective criteria.

35. **Commonality**: There are several questions of law and fact common to the claims of Plaintiff and the Classes on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made telephone calls to individuals who did not provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    (c)    Whether Defendant made the calls with the use of an ATDS;

    (d)    Whether Defendant made multiple calls to persons whose telephone numbers were listed on the Do Not Call registry;

    (e)    Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

    (f)    Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called from Defendant.

36. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is a member of the Classes, and if it violated the TCPA to call Plaintiff then it violated the TCPA to call the other class members. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

38. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiff.

39. **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to call and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

40.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

37.     Defendant made unsolicited and unwanted autodialed telephone calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express consent.

38.     Defendant's calls were made for the purpose of marketing Defendant's loans and financial products.

39.     At no time did Defendant obtain any oral consent or any written consent that disclosed to the called party that the called party consented to be called with an automatic telephone dialing system or pre-recorded voice or that providing such consent was not a

11

condition (direct or indirect) of any purchase of any goods or services.

40. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention.

41. By making unsolicited telephone calls to Plaintiff and members of the Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

42. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

43. In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the Do Not Call Registry Class)

44. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to

avoid receiving telephone solicitations to which they object.

46. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

47. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

48. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

49. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

50. Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy, available on demand, for dealing with do not call requests, by failing to inform or train its

14

personnel regarding any such do not call list, and by failing to record and honor do not call requests.

51.   Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

52.   Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

53.   Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

54.   To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq*.
### (On behalf of Plaintiff and the Autodialed Stop Call Class)

55. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56. Defendant made unsolicited and wanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class on their cellular telephone *after* the person had informed Defendant that s/he no longer wished to receive such calls from Defendant.

57. Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

58. By making unsolicited telephone calls to Plaintiff and members of the Autodialed Stop Call Class's cellular telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express consent.

59. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

60. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Call Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Ison, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Michael Ison as the representative of the Classes and appointing his counsel as Class Counsel;

2. A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call Plaintiff or any of the Class members, that Defendant failed to maintain an internal Do Not Call list and to train its personnel engaged in telemarketing in the existence and use of such a list, and that Defendant failed to honor stop-call requests to Plaintiff and the members of the Autodialed Stop Call Class;

3. An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Class Members;

4. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, to honor do not call requests, to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

5. An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

6. An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

7. An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA and trained its employees in the existence and use of its internal Do Not Call list;

8. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

9. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 30, 2016

**MICHAEL ISON**, individually and on behalf of all others similarly situated,

By: /s/ D. Westbrook Doss, Jr.
One of Plaintiff's Attorneys

D. Westbrook Doss, Jr.
west@dosslaw.biz
The Doss Law Firm
121 North School Avenue
Fayetteville, AR 72701
Telephone: (479) 303-5500
Facsimile: (800) 986-1136

Stefan Coleman*
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

\* *Pro Hac Vice* Admission to Be Sought